UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ARNOLD MONROE and DONTA SNOWDEN, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>HAYWARD UNIFIED SCHOOL DISTRICT and FREMONT UNIFIED SCHOOL DISTRICT,<br><br>Defendants. | Case No. 22-cv-04489-LB<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 27, 28 |

**INTRODUCTION**

The plaintiffs — Arnold Monroe and Donta Snowden — worked as sanitation workers for the two defendants: Hayward Unified School District and Fremont Unified School District. They each worked for no more than forty hours a week at each district but their total weekly hours exceeded forty hours. Citing California Government Code § 20610, which applies to the calculation of pension benefits, they contend that the defendants are one employer and did not pay them minimum wages and overtime wages, in violation of the federal Fair Labor Standards Act (FLSA) and in breach of their union contract. The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the ground that they are not a joint employer.

California Government Code § 20610 applies only to the calculation of retirement benefits, not to wage-and-hours claims. No legal authority supports the contention that the school districts are

one employer and thus collectively required to pay overtime pay. To the contrary, the school districts are separate employers by law. The court grants the motions to dismiss.

## STATEMENT

The plaintiffs worked as sanitation workers for the two school districts. Each worked forty hours a week for one district and extra hours for the second district: (1) Mr. Monroe worked about twenty hours a week for Fremont Unified School District (from May 4, 1981, to April 2021) and about forty hours a week for Hayward Unified School District (from October 22, 1999, to April 2021), and then he retired; and (2) Mr. Snowden has worked about forty hours a week for Hayward Unified School District since 1998 and about twenty-five hours a week for Fremont Unified School District since September 2, 2002. Both plaintiffs have a collective-bargaining agreement that governs their employment.[1]

The plaintiffs sued the defendants for (1) breach of their collective-bargaining agreements, (2) failure to pay minimum wage in violation of the FLSA, 29 U.S.C. § 206, and (3) failure to pay overtime wages in violation of the FLSA, *id.* § 207.[2] The court held a hearing on March 9, 2023.

## JURISDICTION

The court has federal-question subject-matter jurisdiction over the FLSA claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state claim under 28 U.S.C. § 1367. All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[3]

---

[1] First Am. Compl. – ECF No. 20 at 4–7 (¶¶ 17, 21, 23, 27, 30–31). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents. The court grants the defendants' unopposed requests for judicial notice and judicially notices (1) the public-record facts about how the districts operate and (2) the terms of the operative collective-bargaining agreements (under the incorporation-by-reference doctrine). Reqs. – ECF Nos. 27-2, 28-2; Fed. R. Evid. 201; *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (public-record facts); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation-by-reference doctrine).

[2] First Am. Compl. – ECF No. 20 at 6–11 (¶¶ 29–64).

[3] Consents – ECF Nos. 31, 32, 34.

## STANDARDS OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should give leave to

amend if the plaintiff could "articulate a cognizable legal theory if given the opportunity." *Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017).

## ANALYSIS

The dispositive issue is whether the defendants are one employer or distinct entities.[4] They are separate entities and separate employers.

Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." 29 U.S.C. § 203(d). "Regulations promulgated under the FLSA recognized that . . . [w]hen more than one entity is an employer [of the same employee] for purposes of the FLSA, the entities are termed 'joint employers.'" *Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997) (quoting 29 C.F.R. § 791.2(a)). Where there are joint employers, "all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act." 29 C.F.R. § 791.2(a) (effective Aug. 5, 1958, to Mar. 15, 2020). Although § 791.2 has been amended over the years, for present purposes all versions are substantially the same: "If all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee," they are not joint employers. *Id.*; *id.* § 791.2(e)(2) (effective Mar. 16, 2020, to Oct. 4, 2021).

In addition to the regulations, the Ninth Circuit has adopted two tests to determine whether multiple employers are joint employers under the FLSA. *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-cv-04456-PJH, 2018 WL 934545, at *3–5 (N.D. Cal. Feb. 16, 2018). First, the four-part "economic reality" test applies to the "vertical" joint-employment situation where "a company has contracted for workers who are directly employed by an intermediary company." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003); *Senne v. Kan. City Royals Baseball Corp.*, 591 F. Supp. 3d 453, 511 (N.D. Cal. 2022) (citing *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). The four factors

---

[4] Mots. – ECF Nos. 27, 27-1, 28, 28-1.

are whether the alleged joint employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 942 (N.D. Cal. 2019) (quoting *Bonnette*, 704 F.2d at 1470).

Second, "horizontal joint employment exists when two (or more) employers each separately employ an employee and are sufficiently associated with or related to each other with respect to the employee." *Campanelli*, 2018 WL 934545, at *5 (cleaned up). "There is typically an established or admitted employment relationship between the employee and each of the employers, and often the employee performs separate work or works separate hours for each employer." *Id.* (cleaned up). The horizontal test looks at three factors: (1) whether "there is an arrangement between the employers to share the employee's services," (2) whether "one employer is acting directly or indirectly in the interest of the other employer . . . in relation to the employee," or (3) whether "one employer controls, is controlled by, or is under common control with the other employer" and therefore the two "share control" of the employee. *Chao*, 346 F.3d at 917–18 (quoting 29 C.F.R. § 791.2(b) (effective Aug. 5, 1958, to Mar. 15, 2020)).

"Whether an entity is a 'joint employer' under the FLSA . . . is a question of law." *Aguilar v. Rumi Constr.*, No. C 07-0272 JL, 2007 WL 9812735, at *3 (N.D. Cal. June 4, 2007). "At the pleadings stage, although the plaintiff is not required to conclusively establish that [the] defendants were her joint employers," she "must at least allege some facts in support of this legal conclusion." *Lesnik*, 374 F. Supp. 3d at 942 (cleaned up).

Here, the plaintiffs cannot allege facts to support their FLSA claims because under the California Education Code, the defendants are different employers that "are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee." 29 C.F.R. § 791.2(a) (effective Aug. 5, 1958, to Mar. 15, 2020).

School districts act through school boards, which are the employers. *Gonzales v. State*, 29 Cal. App. 3d 585, 590–91 (1972) (citing Education Code provisions in effect in 1972). "Every school district shall be under the control of a board of school trustees or a board of education." Cal. Educ. Code § 35010(a). "The governing board of each school district shall fix and prescribe the duties to

be performed by all persons in public school service in the school district." *Id.* § 35020. In school districts that do not use the "merit system," "[t]he governing board . . . shall employ persons for positions not requiring certification qualifications. . . . The employees and positions shall be known as the classified service." *Id.* § 45103. (The plaintiffs held classified positions.[5]) Likewise, in school districts that use the merit system, "the governing board shall employ, pay, and otherwise control the services of persons in positions not requiring certification qualifications" (though the board's power is limited by the article governing the merit system). *Id.* § 45241.

The "governing board" of a school district can be the county board of education. *San Jose Unified Sch. Dist. v. Santa Clara Cnty. Off. of Educ.*, 7 Cal. App. 5th 967, 981 (2017) (citing Education Code sections). Thus, in theory, a person employed by more than one school district in the same county could be employed by "joint employers" under the FLSA. Normally, though, school districts have their own governing boards. Cal. Educ. Code § 35012(a) ("Except as otherwise provided, the governing board of a school district shall consist of five members elected at large by the qualified voters of the school district.").

The defendant school districts have their own boards of education.[6] Thus, the defendants were by law disassociated from each other in their controlling, paying, and otherwise employing the plaintiffs. They are not joint employers under the FLSA under the regulations or either Ninth Circuit test. Instead, there are two districts, two school boards, and two employers.

The plaintiffs nonetheless contend that the districts are one employer.[7] They predicate this argument on "Part 3, Public Employees' Retirement System," of the government code, which applies to the calculation of pension benefits. Cal. Gov't Code § 20000 ("This part may be cited as the Public Employees' Retirement Law."); *id.* § 20001 ("The purpose of this part is to effect economy and efficiency in the public service by providing a means whereby employees who become superannuated or otherwise incapacitated may, without hardship or prejudice, be replaced

---

[5] First Am. Compl. – ECF No. 20 at 5 (¶¶ 18, 24).

[6] Fremont Unified Sch. Dist. Bd. of Educ. Website, Ex. D to Req. for Jud. Notice – ECF No. 27-2 at 101; Hayward Unified Sch. Dist. Bd. of Educ. Website, Ex. C to Req. for Jud. Notice – ECF No. 28-2 at 115.

[7] Opp'n – ECF No. 35 at 4, 8–9; Opp'n – ECF No. 36 at 4, 8–9.

ORDER – No. 22-cv-04489-LB     6

by more capable employees, and to that end provide a retirement system consisting of retirement compensation and death benefits."); *id.* § 20004(a) ("It is the intent of the Legislature, in enacting this section and amending this part, to comply with, and implement the provisions of, the California Public Employees' Pension Reform Act of 2013 . . . to ensure the continued ability of the board to invest the retirement fund and administer the system in conformity with its duties and responsibilities and to ensure that members are provided with the retirement and related benefits to which they are entitled pursuant to law.").

The plaintiffs rely on California Government Code §§ 20610 and 20635.

They contend that § 20610(a) establishes that the county superintendent is the employer: "school district employees shall be considered employees of the county superintendent of schools having jurisdiction over the school district by which they are employed and service to the district shall be considered service to the county superintendent of schools." The complete text of § 20610(a) is as follows:

> Every county superintendent of schools shall enter into a contract with the board for the inclusion in this system of (1) all of the employees of the office of county superintendent whose compensation is paid from the county school service fund other than employees electing pursuant to Section 1313 of the Education Code to continue in membership in a county system; and (2) all of the employees of school districts and community college districts existing on July 1, 1949, or thereafter formed, within his or her jurisdiction, other than school districts that are contracting agencies or that maintain a district, joint district, or other local retirement system, with respect to service rendered in a status in which they are not eligible for membership in the State Teachers' Retirement Plan. The effective date of each contract shall not be later than July 1, 1949. For the purposes of this part, those school district employees shall be considered employees of the county superintendent of schools having jurisdiction over the school district by which they are employed and service to the district shall be considered service to the county superintendent of schools.

*Id.* § 20610(a).

In the complaint, the plaintiffs ground their claim on § 20635: "one individual may be employed by more than one State Agency for more than one position, [and] the California Government Code Section 20635 dictates that overtime and minimum wages be paid per

employee for all hours actually worked, not per job classification." They then quote § 20635 to support the FLSA claims.[8] The complete text of § 20635 is as follows:

> When the compensation of a member is a factor in any computation to be made under this part, there shall be excluded from those computations any compensation based on overtime put in by a member whose service retirement allowance is a fixed percentage of final compensation for each year of credited service. For the purposes of this part, overtime is the aggregate service performed by an employee as a member for all employers and in all categories of employment in excess of the hours of work considered normal for employees on a full–time basis, and for which monetary compensation is paid.
>
> If a member concurrently renders service in two or more positions, one or more of which is full time, service in the part-time position shall constitute overtime. If two or more positions are permanent and full time, the position with the highest payrate or base pay shall be reported to this system. This provision shall apply only to service rendered on or after July 1, 1994.

*Id.* § 20635.

The plaintiffs thus contend that because the defendants are one employer under §§ 20610 and 20635, the plaintiffs "render[ed] service in two . . . positions, one or more of which is full time," and thus "service in the part-time position shall constitute overtime." Therefore, as one employer, under § 20635, the defendants must pay the plaintiffs FLSA minimum and overtime wages.[9] The plaintiffs bolster this argument in their oppositions by quoting § 20635.1's provisions about overtime:

> Notwithstanding Section 20635, and Section 45102 of the Education Code, when the compensation of a school member is a factor in any computation to be made under this part, there shall be excluded from those computations any compensation based on overtime put in by a member whose service retirement allowance is a fixed percentage of final compensation for each year of credited service. For the purposes of this part, overtime for school members is the aggregate service performed by an employee as a member for all school employers and in all categories of employment in excess of 40 hours of work per week, and for which monetary compensation is paid.
>
> If a school member concurrently renders service in two or more positions, one or more of which is full time, service in the part-time position shall constitute overtime.

---

[8] First Am. Compl. – ECF No. 20 at 5–6 (¶ 25), 8 (¶ 45) (quoting Cal. Gov't Code § 20635) ("[O]vertime is the aggregate service performed by an employee as a member for all employers and in all categories of employment in excess of the hours of work considered normal for employees on a full-time basis, and for which monetary compensation is paid. If a member concurrently renders service in two or more positions, one or more of which is full time, service in the part-time position shall constitute overtime.").

[9] *Id.* at 8–9 (¶¶ 43–50) (quoting Cal. Gov't Code § 20635), 10 (¶¶ 56–61); Opp'n – ECF No. 35 at 10–11; Opp'n – ECF No. 36 at 10.

ORDER – No. 22-cv-04489-LB                    8

> If two or more positions are permanent and full time, the position with the highest payrate or base pay shall be reported to this system.

*Id.* § 20635.1.

These sections do not establish that the defendants are one employer responsible for paying overtime for service in the plaintiffs' part-time positions. The Government Code provisions are about retirement benefits. More specifically, §§ 20635 and 20635.1 are about calculating CalPERS retirement benefits But the defendants' obligations about overtime pay are defined by the FLSA (and would be defined by the California Labor Code for state claims for overtime pay). No legal authority supports the conclusion that pension rules are read into the FLSA or Labor Code rules governing the responsibilities of employers.

The plaintiffs advance no argument other than the Government Code to support their claim that the defendants are one employer for the FLSA claims. The court thus dismisses the claims.

The plaintiffs also allege no facts to support their breach-of-contract claim and effectively concede that there is no breach: "Where Defendant Districts['] fail[ure] to properly classify Plaintiffs' hours worked as overtime hours may have been permissible under the collective bargaining agreement, it was not under the [CalPERS] Benefit Program."[10] The court dismisses the claim.

To the extent that the plaintiffs recharacterize their claims in their opposition as their employers' failure to pay CalPERS contributions, these facts are not alleged in the complaint.[11]

In sum, the operative complaint lacks a cognizable legal theory to support the FLSA claims and lacks plausible factual allegations to support the breach-of-contract claim. The remaining issues are whether to grant leave to amend and what effect that decision has on the court's subject-matter jurisdiction.

For the FLSA claims, amendment would be futile because — as the analysis at the beginning of this section demonstrates — as a matter of law, the two school districts are not joint employers.

---

[10] Opp'n – ECF No. 35 at 4–5; Opp'n – ECF No. 36 at 4–5.

[11] Opp'n – ECF No. 35 at 8; Opp'n – ECF No. 36 at 8.

The plaintiffs' legal theory in support of their FLSA claims could be cognizable only if the defendants were joint employers.

For the breach-of-contract claim, there are two collective-bargaining agreements, one for each district: each agreement is between an individual school district and the corresponding union.[12] The agreements define overtime pay for the union employees' work for the particular district, not for other districts.[13] The agreements have grievance procedures: as Hayward points out, the plaintiffs have not alleged that they complied with the procedures.[14] In theory, amendment might not be futile: the defendants provided their collective-bargaining agreements for certain years, and possibly other agreements govern the claims. That said, for a breach-of-contract claim in any amended complaint to be plausible, the plaintiffs must allege that their collective-bargaining agreements applied to work performed for more than one school district. That seems unlikely, given the agreements provided here.

If the plaintiffs were to file a further amended complaint, though, it would have only a state-law claim. The parties are not diverse: they are all citizens of California. The court would not exercise supplemental jurisdiction over the state claim after further amendment of the complaint.

A federal court may exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). Indeed, unless "considerations of judicial economy, convenience[,] and fairness to litigants" weigh in favor of the exercise of supplemental

---

[12] Collective Bargaining Agreements (Fremont Unified Sch. Dist.), Exs. A–B to Req. for Jud. Notice – ECF No. 27-2 at 6–97; Collective Bargaining Agreement (Hayward Unified Sch. Dist.), Ex. A to Req. for Jud. Notice – ECF No. 28-2 at 6–110.

[13] Collective Bargaining Agreement (Fremont Unified Sch. Dist., 1979–1980), Ex. A to Req. for Jud. Notice – ECF No. 27-2 at 28–29 (Art. V-E); Collective Bargaining Agreement (Fremont Unified Sch. Dist., 1998–2001), Ex. B to Req. for Jud. Notice – ECF No. 27-2 at 57–58 (Art. 7); Collective Bargaining Agreement (Hayward Unified Sch. Dist., 2019–2022), Ex. A to Req. for Jud. Notice – ECF No. 28-2 at 30–31 (Art. 12, § G).

[14] Mot. – ECF No. 28-1 at 11–12.

jurisdiction, "a federal court should hesitate to exercise jurisdiction over state claims." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.").

Given the court's dismissal of the federal claims at the pleadings stage, the court would decline to exercise supplemental jurisdiction over the contract claim after amendment.

## CONCLUSION

The court dismisses the FLSA claims without leave to amend and the contract claim without prejudice to filing any amended complaint in state court. This resolves ECF Nos. 27 and 28.

**IT IS SO ORDERED.**

Dated: March 12, 2023

LAUREL BEELER
United States Magistrate Judge